IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 11-cv-01762-MSK

MAINLIN JOSEFINA SUAREZ,

       Petitioner,

v.

REINALDO JOSE MICHELENA CASTRILLO,

       Respondent.

## OPINION AND ORDER DENYING MOTION FOR RECONSIDERATION

**THIS MATTER** comes before the Court pursuant to Mr. Castrillo's Motion for Reconsideration **(# 4)** of the Court's July 7, 2011 *sua sponte* Opinion and Order Remanding Action **(# 3)**.

Ms. Suarez and Mr. Castrillo are the parents of three minor children. Ms. Suarez, who lives in Canada, commenced this action in Colorado state court, alleging that a Venezuelan custody order gave her custody of the children, and that Mr. Castrillo was improperly retaining the children in Colorado following the conclusion of a mutually-agreed upon period of visitation. Ms. Suarez's action solely invoked the provisions of Colorado's Uniform Child Custody Jurisdiction Enforcement Act ("UCCJEA"). Mr. Castrillo removed **(# 1)** the action to this Court, alleging, among other things, that the UCCJEA was preempted by the principles of the Hague Convention on the Civil Aspects of International Child Abduction ("Hague Convention"), to which the United States is a signatory. As a result, Mr. Castrillo argued, Ms. Suarez's state

1

law claims became federal claims, creating subject-matter jurisdiction in this Court pursuant to 28 U.S.C. § 1331.  This Court *sua sponte* remanded the case, finding that Ms. Suarez's petition invoked Colorado state law, not any federal claim; and that Mr. Castrillo's abbreviated preemption argument was unsupported by citations to authority and inconsistent with the terms of federal law and the Hague Convention, both of which expressly attempt to accommodate legal remedies that sweep more broadly than the terms of the treaty itself.

Mr. Castrillo now requests reconsideration of the Court's Order, focusing solely on the contention that Colorado's UCCJEA is preempted by the Hague Convention.  Mr. Castrillo contends that, because proceedings under the UCCJEA do not encompass determinations required in Hague Convention proceedings – *e.g.* determination of the child's place of "habitual residence" and inquiry into the child's wishes – the UCCJEA is inconsistent with (or, at the very least, presents "an obstacle to") the Hague Convention's "purposes and objectives [of] protecting the well-being and rights of children."  As a result, argues Mr. Castrillo, application of the UCCJEA is preempted.

The Court indulges an assumption that preemption should not be inferred absent some indication that abrogating state law "was the clear and manifest purpose of Congress" in enacting the federal law.  *Wyeth v. Levine*, 555 U.S. 555, 565 (2009). Although Congressional intent to preempt need not always be expressly stated, inquiry into whether Congress impliedly intended to preempt state laws "does not justify a freewheeling judicial inquiry into whether a state statute is in tension with federal objectives." *Chamber of Commerce v. Whiting*, 131 S.Ct. 1968, 1985 (2011).  To the contrary, a "high threshold must be met if a state law is to be preempted for conflicting with the purposes of a federal act." *Id.*

Mr. Castrillo invokes the doctrine of "conflict preemption," under which state laws that "stand as an obstacle to the accomplishment and execution of the full purposes and objectives of a federal law" are preempted. *Williamson v. Mazda Motor of America, Inc.*, 131 S.Ct. 1131, 1136 (2011). Courts sometimes speak in terms that suggest distinct analytical strands of conflict preemption. For example, there are sometimes references to "actual conflict" or "impossibility" cases where the state and federal schemes "directly conflict," such that "it is impossible for a private party to comply with both state and federal requirements." *PLIVA, Inc. v. Mensing*, ___ U.S. ___, 2011 WL 2472790 (June 23, 2011), *citing Freightliner Corp. v. Myrick*, 514 U.S. 280, 287 (1995). Other times, state laws that conflict only indirectly with federal acts are nevertheless preempted because the state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941). However, in *Geier v. American Honda Motor Co.*, 529 U.S. 861, 873 (2000), the Supreme Court explained that a distinction between conflicts "that prevent or frustrate the accomplishment of a federal objective and conflicts that make it impossible for private parties to comply with both state and federal law" is a "terminological" distinction, not a "legal" one. (Internal quotes omitted). It found "no grounds . . . for attempting to distinguish among types of federal-state conflict," instead setting forth the "basic question" applicable to all types of conflict preemption issues: whether there is an actual conflict between the state and federal schemes. *Id.* at 873-74.

Focusing on this question, then, the Court turns to an inquiry into whether UCCJEA's operation actually conflicts with the Hague Convention's operation. The Court finds it does not, insofar as the Hague Convention and UCCJEA address two different objectives.

The Hague Convention is effectively procedural in nature. In *Kijowska v. Haines*, 463 F.3d 583, 585 (7th Cir. 2006), the court explained that

> the convention is aimed at parties to custody battles who remove the child from the child's domicile to a country whose courts the removing parent thinks more likely to side with that parent. To prevent this unsavory form of forum shopping, the convention requires that the determination of whether the removal of the child was wrongful be made under the law of the country in which the child has his or her "habitual residence."

The same theme is echoed in the influential Explanatory Report ("the Report") of Elisa Perez-Vera, official Hague Conference reporter. *See Koch v. Koch*, 450 F.3d 703, 711 (7th Cir. 2006) (characterizing the Report as "an authoritative source for interpreting the Convention's provisions"). In describing the "Object of the Convention," the Report explains that, typically,

> the person who removes the child . . . hopes to obtain a right of custody from the authorities of the country to which the child has been taken. . . It frequently happens that the person retaining the child tries to obtain a judicial or administrative decision in the State of refuge, which would legalize the factual situation he has just brought about [or may, through inaction, induce the other parent to seek a ruling] . . . [T]he abductor will hold the advantage, since it is he who has chosen the forum in which the case is to be decided, a forum which, in principle, he regards as more favorable to his own claims.

Professor Perez-Vera crystalizes this problem as the abductor absconding with the child in order to "establish[ ] legal and jurisdictional links [in the new forum] which are more or less artificial. *Report*, ¶ 15. The Convention operates to break those artificial jurisdictional links by restoring the child to a forum that enjoys real and actual jurisdiction over the child – the forum of the child's habitual residence.

Importantly, the Hague Convention "is not essentially concerned with the merits of custody rights." *Id.*, ¶ 9. The Report explains that "with the exception of the indirect means of

protecting custody rights which is implied by the obligation to return the child to the holder of the right of custody, respect for custody rights falls almost entirely outwith the scope of the Convention." *Id.*, ¶ 17. In this regard, the Convention makes clear that an action under its terms "is not an action to determine the merits of custody rights," but rather, "to simply determine which country is the proper forum for that custody determination." *Koch,* 450 F.3d at 711; *see also Report,* ¶ 40 ("In fact it is only after the return of the child to its habitual residence that questions of custody rights will arise before the competent tribunals"); ¶ 19 ("it would be advisable to underline the fact that . . . the Convention does not seek to regulate the problem of the award of custody rights. On this matter, the Convention rests implicitly upon the principle that any debate on the merits of the question, i.e. of custody rights, should take place before the competent authorities in the State where the child had its habitual residence prior to its removal").

In short, a Hague Convention proceeding does not decide <u>who should have</u> custody of the child; it resolves only <u>which court will decide</u> who should get custody. The fact that the Convention (usually) directs that the child be taken to the jurisdiction that will make the custody decision is strictly a procedural directive, just as the court might direct that a physical *res* that was wrongfully removed from a forum during a dispute over its ownership be returned to that forum so as to allow the court with jurisdiction to exercise it.

By contrast, the UCCJEA is a statute governing the enforcement of custody decisions. *See e.g. In re Marriage of Dedie and Springston*, ___ P.3d ___, 2011 WL 2529720 (Colo. Jun. 27, 2011) ("the UCCJEA as adopted by Colorado requires Colorado courts to recognize and <u>enforce a child custody determination</u>"). Unlike a Hague Convention proceeding, the end result

of a UCCJEA proceeding is a conclusive determination of who will have custody of the child. A superficial view of the two schemes might lead one to equate them, insofar as a successful petition by a parent under each would appear to result in the petitioning parent obtaining physical custody of the child,[1] but such observation overlooks important differences in what each scheme adjudicates. The parent leaving a UCCJEA hearing with the child has obtained an <u>order of legal and physical custody</u>; the parent leaving a Hague Convention hearing with the child obtains nothing more than a determination as to what court will determine questions of legal custody. If the directive is to return the child to another forum, the parent who has physical custody is required to do so - such physical custody lasts just long enough to deliver the child to another jurisdiction where the question of legal and physical custody will eventually be decided.

Thus, there is no inherent conflict between the Hague Convention and the UCCJEA, as the two schemes operate towards different ends. By invoking the UCCJEA, Ms. Suarez is not requesting the opportunity to take the children into her possession in order to deliver them to a proceeding in Canada where custody will be determined; she is seeking an order from Colorado that will award her custody of the children for all future purposes – without ever needing to set foot in a courtroom in Canada. In this regard, Mr. Castrillo's invocation of the Hague Convention is a non-sequitur, premised upon a belief that Ms. Suarez's petition is something

---

[1] Even this understanding is mistaken. The remedy under the Hague Convention is "return of the child," not "return of the child to the petitioning parent." As noted above, the purpose of the Hague Convention is to physically return the child to the jurisdiction that will adjudicate his or her custody. As such, a Hague Convention order will simply direct that the child be returned to the place of habitual residence, not necessarily that it be returned to the custody of the petitioning parent in that place. If the respondent parent is prepared to return to the place of habitual residence with the child, but not surrender custody of the child to the petitioning parent unless and until that venue's court directs, it would seem that the Hague Convention's requirements have been satisfied.

that, in actuality, it is not. Because the Hague Convention is not concerned with questions of custody, and the UCCJEA is, Ms. Suarez's invocation of the UCCJEA cannot cause any actual conflict with the Hague Convention, and thus, is not preempted by it.

For that reason, the Court denies Mr. Castrillo's motion for reconsideration, as there is no facial conflict between the Hague Convention and the UCCJEA sufficient to support a claim of preemption.[2]

---

[2] In the interests of ensuring that he is fully heard, the Court has considered the remainder of Mr. Castrillo's arguments by indulging in the assumption that, as Mr. Castrillo contends, the two schemes are nevertheless sufficiently comparable that a conflict analysis could be undertaken between them. Having done so, the Court finds that Mr. Castrillo's remaining arguments are unpersuasive.

Specifically, the Court is not persuaded by Mr. Castrillo's argument that the Convention is child-focused, such that its express language refusing to preempt other legal remedies that might exist must be read to endorse only those alternative remedies that work to advance some ephemeral "interests of the child." The Report makes clear that the Convention itself attempts to harmonize two competing conceptions of what is in a child's "best interests" – being protected from the dangers inherent in unilateral removal from the child's habitual residence and the possibility that such removal might have some objective justification. *Report*, ¶ 23-25. This tension makes it unwise to read the Convention's non-exclusivity language as narrowly as Mr. Castrillo urges.

The Court also rejects Mr. Castrillo's contention that the UCCJEA radically deviates from the Convention's focus upon the child's place of habitual residence, such that the UCCJEA would permit absurd results. The UCCJEA requires that any foreign custody order sought to be enforced be rendered by a court in the child's "home state" at the time, C.R.S. § 14-13-201(1)(a), ensuring, contrary to Mr. Castrillo's contention, that the child is not returned to a jurisdiction with which he or she has never had any connection. Moreover, the statute permits the Colorado courts to disclaim jurisdiction over the proceeding and transfer the case to a more appropriate court upon a finding that Colorado's connection with the dispute is too tenuous. C.R.S. § 14-13-207. This is closely related to the Hague Convention's intention of having the jurisdiction with the strongest ties to the child – the place of the child's "habitual residence" – make the final custody determination.

Finally, the Court is unconvinced by Mr. Castrillo's argument that the UCCJEA's lack of a provision similar to Article 13 of the Convention – allowing the court to refuse to return a mature child if that child objects to being returned – is sufficient to render the two schemes sufficiently in conflict to warrant preemption. Assuming, without necessarily finding, that no provision of the UCCJEA permits the court to consider the child's desires, this Court nevertheless observes that the ability of the tribunal to honor the child's wishes is subject to

Mr. Castrillo requests, as alternative relief, a statement "that this Court's holding does not bar [him] from asserting the exceptions to removal under the 1980 Hague Convention in the state court action," insofar as he "wishes to argue in the state court that the UCCJEA should be read in harmony with the Hague Convention." Mr. Castrillo cites, and this Court is aware of, no authority for the proposition that this Court can dictate to the state court what it may or may not, or must or must not, consider. Whether and to what extent the principles underlying the Hague Convention affect the state court's consideration of Ms. Suarez's petition is a matter for the state court, not this Court, to determine. This Court simply finds that, contrary to Mr. Castrillo's arguments, the UCCJEA is not preempted by the Hague Convention under the principles governing federal preemption.

For the foregoing reasons, Mr. Castrillo's Motion for Reconsideration **(# 4)** is **DENIED**. The Clerk of the Court shall promptly effect the remand of this case.

Dated this 13th day of July, 2011

                                                **BY THE COURT:**

                                                *Marcia S. Krieger*

                                                Marcia S. Krieger
                                                United States District Judge

---

multiple layers of judicial discretion: as to whether the child is sufficiently mature, as to the weight that should be given to the child's expression of his or her opinions, and as to whether that weight outweighs the private and public interests served by returning the child. Given that relief under this provision of Article 13 is highly conditional, this Court does not find that the absence of a corresponding mechanism under the UCCJEA renders the two schemes sufficiently in conflict that preemption must necessarily result.